MICHAEL JOYCE *vs.* POWER CONSTRUCTION COMPANY.

Suffolk.    March 29, 1916. — June 21, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Negligence,* Employer's liability.    *Practice, Civil,* Exceptions.

Where a corporation which is constructing a dam uses during a period of at least four months for the purpose of conducting steam to steam drills several stationary steam boilers set up in shacks and a system of steam pipes running from them to the drills, and it does not appear that any change in the location of a boiler and shack, once placed in position, was contemplated during the progress of the work, or that a change in the use, length or direction of a pipe line necessitated or permitted an interference with the arrangement of the pipes connected with the boiler within the shack, the boilers and the pipes connected with them are permanent appliances and the corporation owes to its employees the common law duty of maintaining such appliances in a reasonably safe condition and of warning those using them of perils attending their use.

If, at the trial of an action against the corporation by an employee who was in charge of one of such boilers for personal injuries caused by the breaking or bursting inside the shack of a three inch steam pipe running from it at a point where, by reducing bushings, it was joined to a two inch pipe, also connected with the boiler, there is evidence tending to show that the break was caused either by the sagging of the two inch pipe due to its being supported at a point

outside the shack on a stone which rested on ice which had melted, or by the chemical action upon the connecting threads at the joint of the two pipes of ashes in which the pipes were buried, or to both causes acting concurrently, it cannot be ruled as a matter of law that the plaintiff, who is not shown to have known of the connection of the pipes beneath the ashes, is precluded from recovery by reason of the fact that the pipes running to the drills were cut, joined and laid by his fellow employees as need occurred, because it cannot be ruled as a matter of law that the plaintiff's injuries were caused solely by the negligence of his fellow employees in not properly supporting the pipe at a point outside of the shack and they might have been found to have been caused in part by a neglect of duty on the part of the defendant in failing properly to protect the pipe under the shack from the chemical action of the ashes.

The record in the above action stated that, at the trial, subject to an exception by the defendant, the judge in his charge stated: "I draw a distinction between this kind of work, that is, a construction of this character and a temporary staging put about a building, however I may be wrong in relation to that." Before this court the defendant presented no argument intended to show that it was harmed by such portion of the charge, and it was assumed that the exception was waived.

TORT for personal injuries, received by the plaintiff on May 24, 1912, while in the employ of the defendant in the construction of a dam which the defendant was building at Mountain Mills, Vermont, during 1911 and 1912, and caused under the circumstances described in the opinion by the breaking or bursting of a pipe used to conduct steam to steam drills used in excavation work. Writ dated July 19, 1912.

In the Superior Court the case was tried before *Stevens,* J. The material evidence and certain rulings requested by the defendant and refused by the judge subject to exceptions by the defendant are described in the opinion. There was a verdict for the plaintiff in the sum of $4,000. The defendant alleged exceptions.

*F. Peabody, E. K. Arnold & S. H. Batchelder,* for the defendant, submitted a brief.

*S. A. Fuller,* (*T. J. Ahern* with him,) for the plaintiff.

PIERCE, J. As submitted the case went to the jury on the third and fifth counts, the former of which in substance charged that the defendant failed to furnish the plaintiff with proper and safe implements and tools and a proper place to work, and the latter of which in substance charged that the defendant failed to notify the plaintiff of a danger which the plaintiff did not know, and which the defendant knew or ought to have known.

At the close of the evidence the defendant requested the court to rule:

"3. The plaintiff cannot recover under the third count of his declaration."

"5. The plaintiff cannot recover under the fifth count of his declaration."

"19. The defendant fulfilled its entire duty to the plaintiff, so far as this count [third] is concerned, if it provided suitable pipes and connections from which the employees could construct for themselves such steam pipes, connections and extensions as were necessary in the performance of the work. ·

"20. If the jury find that suitable pipes and connections were provided by the defendant and that they were put together negligently by the men themselves and such negligence caused the accident, then that would be merely the negligence of a fellow employee of the plaintiff and he cannot recover."

In its brief the defendant argues:

"I. The court should have directed a verdict for the defendant under the third count of the declaration.

"II. The court should have directed a verdict for the defendant under the fifth count of the declaration."

The uncontradicted evidence shows that the plaintiff sustained injuries by reason of the bursting of a steam pipe connected with an upright boiler of which he had charge. The boiler was installed in a shack which was erected about December 25, 1911, by the defendant, soon after the plaintiff entered its employment. In February, 1912, an upright three inch pipe, which conducted the steam from the top of the boiler, was connected by means of reducing bushings with a two inch pipe at or near the bottom of the boiler. The two inch pipe ran along the ground inside the shack from three to nine feet, under ashes; it then turned at right angles and ran about two feet through and to the outside of the shack, and then ran about twenty feet to a point five feet below the level of the shack. The lower end of the pipe rested upon a stone, which in turn rested upon snow and ice one or two feet in depth. At the stone, the two inch pipe was connected with pipes running at right angles to it, one extending in one direction one hundred and fifty feet, the other in another direction ninety feet. At the time of the accident the snow was pretty well gone under the stone support.

The jury could have found that the break at the point of con-

nection between the three inch and the two inch pipes was caused by the sagging of the pipe in consequence of the snow melting under the stone and causing a lack of sufficient and proper support of the pipes, or by reason of chemical action of the ashes on the pipe at the point of fracture, or as the result of the concurrent and combined action of both causes.

The evidence was undisputed that the particular boiler and shack was one of seven boilers and shacks, placed and installed at points best adapted to facilitate the distribution of steam used as power in the defendant's work of constructing a dam. Pipes were laid by the men, as needed, from the boilers to whatever point the power was to be applied. The pipes were constructed from pipe of "all lengths and descriptions" and were cut to suit the work. In addition to the pipe, there was kept and available for use a large supply of nipples, elbows and other fittings. The employees were expected to select the parts, join them, disconnect them, and cut them as the length and character of the pipe to be used required.

There is no evidence that any change in the location of a boiler and shack, once placed in position, was made or contemplated, or that a change in the use, length or direction of a pipe line necessitated or permitted an interference with the arrangement of the pipes connected with the boiler within the shack. The result is that while it properly may be said that the pipe lines, because of their transitory nature, are of the class of instrumentalities and appliances that may be left to the construction, supervision, care and oversight of servants or agents, it cannot be affirmed that a boiler and its connections are not permanent appliances when situated as this boiler and shack were. *Prendible* v. *Connecticut River Manuf. Co.* 160 Mass. 131. Nor can it be said that the master owed no duty to its servants to maintain the boiler and its connections in a reasonably safe condition or to warn those using them of dangers and perils attending their use. *Rice* v. *King Philip Mills*, 144 Mass. 229, 237.

The plaintiff entered upon the work in the boiler house on May 23, 1912, and was injured on May 24, 1912. There is no evidence to warrant a finding that he knew of or could have seen beneath the ashes the connection of the pipes, or the manner of their union. If he knew that sulphites in wet ashes would produce a chemical

action sufficient "to destroy the threads of the cast iron pipe, and would have a tendency to eat the iron away and thereby weaken it," he also knew and had the right to assume that the defendant had or might have by the exercise of reasonable care, equal knowledge of the certainty of such chemical action, and to believe as a fact in the absence of warning that the defendant had provided safeguards adequate to reasonably insure the continuance of the strength of a pipe which was intended to be subjected to ninety pounds pressure of steam.

Assuming that the break in the pipe was due in part to the failure of co-servants to perform a duty to provide continuous support to the pipe outside the shack, and in part to the neglect of the defendant to protect the pipe within the shack from corrosion, the plaintiff established a cause of action which was sufficiently alleged, and not improperly, although informally, described in his declaration. *Ferren* v. *Old Colony Railroad*, 143 Mass. 197. *Griffin* v. *Boston & Albany Railroad*, 148 Mass. 143, 145. *Myers* v. *Hudson Iron Co.* 150 Mass. 125. *Haskell* v. *Cape Ann Anchor Works*, 178 Mass. 485.

The evidence did not warrant a ruling that the accident was due solely to the negligence of fellow servants in constructing or placing the pipes.

It follows that the request for rulings could not have been given.

The defendant also excepted to that portion of the charge in which the judge stated: "I draw a distinction between this kind of work, that is, a construction of this character and a temporary staging put about a building, however I may be wrong in relation to that."

The brief presents no argument intended to show that the defendant was harmed by the above quoted expression of opinion as to the permanency or otherwise of the pipes as laid or placed by the workmen, and the exception is assumed to be waived. *Howard* v. *Holman*, 203 Mass. 445, 448. *Maguire* v. *Pan-American Amusement Co.* 211 Mass. 22, 27.

We find no reversible error and the exceptions must be overruled.

*So ordered.*